Argued and submitted March 28, reversed in part and remanded for a new trial; otherwise affirmed August 29, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# ABEL FRAGA-ORTIZ,
*Appellant.*

## C970296CR; A106233

31 P3d 1089

Steven V. Humber argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Timothy A. Sylwester argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals his convictions for ten counts of delivery of controlled substances and eight counts of possession of controlled substances. ORS 475.992. He argues that the trial court erred when it denied his motion to suppress certain evidence found during a warrantless search of a suitcase and that it subsequently erred by giving a jury instruction, over his objection, that stated that the possession of controlled substances with the intent to deliver them also constitutes delivery, even when no actual transfer of the drugs occurs. We affirm defendant's convictions on counts 1 through 9, reverse defendant's convictions on counts 10-18, and remand for a new trial on those counts.

Defendant was arrested after he was involved in several drug sales to an undercover officer. That arrest led to the charges in counts 1 through 9. Immediately following his arrest, defendant was advised of his *Miranda* rights, and he consented to the officers' search of several vehicles. He was then taken to several addresses in Hillsboro with which he had some connection. He consented to a search of his room at a residence at 5302 E. Baseline, where little evidence was found. He was then questioned about a residence at 951 SE 13th, Apartment #43, because he had been issued Oregon identification cards that showed that residence as his address. Defendant told police that he did not live there and had not lived there recently. An officer obtained consent to search Apartment #43 from Pena, a resident of that apartment, and searched the entire apartment. When officers found a room containing a large suitcase and multiple personal belongings, they asked Pena who owned the items. He said that they belonged to a man who lived there. The officers searched the suitcase and found the controlled substances that form the basis of defendant's convictions in counts 10 through 18, along with papers belonging to defendant.

At a pretrial hearing, defendant moved to suppress the evidence found in apartment #43, claiming that Pena did not have authority to consent to a search of the room in which

the evidence was found or to consent to a search of the suitcase and that the state did not otherwise prove that the warrantless search did not violate a protected interest of defendant's under Article I, section 9, of the Oregon Constitution.[1] The trial court reasoned:

"[t]hat the defendant had no personal protected privacy interest in the suitcase at 951 SE 13th, Apt 43, Hillsboro, Oregon, and the defendant made no statements that he had a proprietary or privacy interest in that suitcase."

It concluded:

"Finally, with regard to the search of the premises and items contained in the premises at 951 Southeast 13th, Apartment 43, the Court finds that the defendant has never claimed any proprietary interest in the residence or anything contained therein—in fact, has steadfastly denied any interest in such things—and, therefore, has no standing to complain as regards a search that was made."

The trial court then denied the motion to suppress,[2] and the case proceeded to trial before a jury.

At trial, the trial court gave a jury instruction that stated, as to the charges of delivery of controlled substances, that "possession with intent to deliver also constitutes delivery, even when no actual transfer is shown." Defendant objected to the instruction, saying to the court:

"When you, in the delivery instruction, defined secondarily, I guess it is, possession with intent to deliver constitutes

---

[1] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] The trial court ruled pursuant to our holding in *State v. Knox,* 134 Or App 154, 984 P2d 1185 (1995), *vacated* 327 Or 97, 957 P2d 1209 (1998). In *Knox,* we held that:

"As a matter of law, a defendant must assert a 'protected right in the particular item of property' before he or she may assert that it was unconstitutionally seized." 134 Or App at 161.

After the trial court ruled, the Supreme Court held in *State v. Tucker,* 330 Or 85, 997 P2d 182 (2000), that a defendant need not assert a protected interest in property before asserting that it was unconstitutionally seized.

delivery even when no actual delivery is shown, that's surplus language beyond the statute. It's not contained in the statute. So I would except to that portion of that statute. That's the only exception."

Defendant was convicted on all 18 counts of the indictment.

■■ On appeal, defendant assigns error to the denial of his motion to suppress and to the giving of the jury instruction. As to the latter assignment, defendant's counsel told the trial court that the jury instruction was erroneous because it added "surplus language beyond the statute." We understand that statement to mean that the instruction had the effect of permitting the jury to find defendant guilty of delivery of a controlled substance even though no actual delivery occurred. On appeal, defendant raises a different issue. He argues that the instruction was erroneous because it "shifted the burden of persuasion from the state on the element of 'commission of a substantial step,' " and "eliminated the qualitative language of 'substantial step' as an element altogether." When an error alleged on appeal is not raised below, but a different claim of error is made, the error alleged on appeal is unpreserved. *State v. Montez*, 324 Or 343, 356, 927 P2d 64 (1996), *cert den* 520 US 1233 (1997). Moreover, there is no compelling reason in this case to exercise our discretionary power to address the assignment as error apparent on the face of the record, and we therefore decline to address defendant's unpreserved claim of error. *See State v. Wyatt*, 331 Or 335, 15 P3d 22 (2000). Defendant's assignment of error as to the jury instruction is his only challenge on appeal to his convictions on counts 1 through 9, and we therefore affirm those convictions.

As we understand the trial court's rulings on the motion to suppress, it essentially made two rulings. First, the trial court ruled under Article I, section 9, of the Oregon Constitution, that the defendant did not have standing to complain about the seizure and search of the suitcase, because he never asserted an interest in the suitcase. Second, the trial court ruled that "defendant had no personal protected privacy interest in the suitcase," as a matter of law.

■ As to the trial court's ruling that defendant did not have "standing" to complain of the search, the Supreme

Court said in *State v. Tanner*, 304 Or 312, 316, 745 P2d 757 (1987),

> "there is no issue of defendant's standing to challenge the unlawful search[.] A criminal defendant always has standing to challenge the admission of evidence introduced by the state. The question whether a defendant's personal rights were violated by an unlawful search or seizure is often mislabeled a question of 'standing,' but the question goes to the merits of a motion to suppress. The term 'standing' should be used only in the narrow sense of capacity to make a legal challenge."

Moreover, defendant was not required to make an affirmative assertion of a possessory or privacy interest in the suitcase in order to challenge its admission into evidence. In *State v. Tucker*, 330 Or 85, 88-89, 997 P2d 182 (1999), the Supreme Court said,

> "In the context of a warrantless search, a *defendant is not required to assert a protected property or privacy interest* on which the state intruded. Rather, consistent with ORS 133.693(4), the burden is on the state to prove that the warrantless search did not violate a protected interest of the defendant." (Emphasis added.)

Under *Tucker*, the issue is whether defendant had a protected privacy or possessory interest in the suitcase.

As to the trial court's ruling that defendant had no protected interest in the suitcase under Article I, section 9, we review the trial court's explicit and implicit findings of fact to determine whether they are supported by evidence and its conclusion of law for errors of law. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). At the hearing on the motion, the state presented evidence showing the sequence of events leading up to the seizure of the suitcase. Defendant had been arrested elsewhere, handcuffed, and then driven to apartment #43. He was asked sometime during that sequence whether he lived at apartment #43, and he said "no." When an officer told defendant that the police knew he had Oregon identification that identified apartment #43 as his residence, defendant stated he did not currently live at that address. He did not make any statements as to whether he had any property at that address. The state also presented

evidence that the occupant of the apartment, Pena, said the suitcase belonged to someone who lived at the apartment, but Pena also said that he didn't know all of the people who lived there. The suitcase was then searched and seized. There is no evidence that defendant was present at the time.

■■  As to the results of the search, an officer testified that,

> "We found a plastic bag that contained 22 small Ziploc 1 by 1 baggies of either a half to a gram of heroin, tar heroin. We found a rental receipt with the name of Gustavo Pena on it. We found a small plastic baggy containing methamphetamine. * * * We found a wallet with the name of "Abel Fraga" with the date of birth of 1-13-73 and a vehicle registration in that suitcase, as well. * * * We found some miscellaneous paper work with items of identification related to [defendant]. We found some vehicle titles and identification specifically for the vehicles themselves."

Later, at the police station, another conversation with the defendant took place regarding the suitcase, about which Officer Gruby testified:

> "Q.  And what did [defendant] tell you with regard to the suitcase and the things that were in it?
>
> "A.  He basically said it wasn't his, for all intents and purposes, that—in that, you know, I had basically kind of laid out a little bit of the investigation of what we knew. He denied having any activity in drugs. * * * I asked him again about the heroin that was found in No. 43. He said that the guy had given him a plastic bag—some guy—had given him a plastic bag, and [defendant] had put it in his suitcase in the apartment—although, allegedly before he had not lived there—and I asked him about the marijuana, and he said that, again, a guy had given him the bag of marijuana.
>
> "* * * * *
>
> "Q.  And in that conversation, then, back at the Hillsboro Police Department, it sounds like—and correct me if this is wrong—but he basically said the suitcase wasn't his, and later on he kind of said it was his?

"A. Basically when we first went to the 951 address, he said he didn't live there, he doesn't live there, but when I started to say, 'Well, your ID is here, What's up with this?' then he had some indication that he was just storing stuff there for a guy that had given him stuff."

In general, the entrustment of an article of personal property to another does not forfeit a privacy interest in the article and such an interest is violated when the article is subjected to an unlawful search. *Tanner*, 304 Or at 323. We hold that the presence of personal and legal documents of defendant's in the suitcase compels the conclusion that defendant had and retained a privacy interest in the contents of the suitcase, an interest that is protected by Article I, section 9. Pena's statements to the officer that the suitcase was not his, and that it belonged to someone else tend to further support that inference.[3]

Convictions on counts 10-18 reversed and remanded for a new trial; otherwise affirmed.

---

[3] We do not decide on this record whether Pena had common authority to consent to the search of the suitcase. We note, however, that even if the officers had a mistaken good faith belief that Pena had actual or implied authority to consent to the search of the suitcase, it does not follow that the officers could lawfully search it. *See State v. Carsey*, 295 Or 32, 664 P2d 1085 (1983). Also, there is no evidence that defendant waived his rights under Article I, section 9, before the search occurred.